**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RONNIE COLE,**

                                        **Plaintiff,**

**v.**                                                              **9:14-CV-0539 (BKS/DEP)**

**PAUL M. GONYEA, et al.,**

                                        **Defendants.**
_____

**APPEARANCES:**

For Plaintiff:
**Samantha L. Millier, Esq.**
Mackenzie Hughes LLP
Mackenzie Hughes Tower
440 South Warren Street, Suite 400
Syracuse, NY 13202

For Defendants:
**Aimee Paquette, Esq.**
Assistant Attorney General, of Counsel
**ERIC T. SCHNEIDERMAN**
Attorney General of the State of New York
Syracuse Regional Office
615 Erie Blvd. West, Suite 102
Syracuse, NY 13204


**Hon. Brenda K. Sannes, United States District Court Judge:**

                    **MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        Plaintiff Ronnie Cole, an inmate in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS"), brought this civil rights action under 42

U.S.C. § 1983 against several defendants.  On September 26, 2016, the Court granted in part and

denied in part Defendants' motion for summary judgment. (Dkt. No. 61). The Court ruled that Plaintiff had raised claims against seven defendants that would proceed, including an excessive force claim against Defendant Stephen LoRusso and a failure to protect claim against Defendant Timothy Michaels. (Dkt. No. 61). At Defendants' request, the Court held an evidentiary hearing on April 26, 2017 to determine whether Plaintiff has exhausted the administrative remedies requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) with respect to his claims against Defendants LoRusso and Michaels. For the reasons set forth below, the Court finds that Plaintiff may proceed to trial with his remaining claim against Defendant LoRusso, but not against Defendant Michaels.

## II.     DISCUSSION

### A.     Exhaustion of Administrative Remedies

"No action shall be brought with respect to prison conditions under . . . []42 U.S.C. § 1983[], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (internal quotation omitted). To properly exhaust his administrative remedies an inmate must complete the administrative review process in accord with the applicable state procedural rules. *Jones v. Bock*, 549 U.S. 199, 218–19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90–91.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y.C.R.R. §§ 701.5(a)(1), (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* at § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"); the appeal must be submitted within seven days after receipt of the Superintendent's decision. *Id.* at § 701.5(d)(1)(i). Appeals to CORC are date stamped upon receipt, and a copy of the written notice of receipt is returned to the grievant. *Id*. at § 701.5(d)(2)(i). "If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, [he] should contact the [Inmate Grievance Program] supervisor in writing to confirm that the appeal was filed and transmitted to CORC." *Id.*

However, "[u]nder the PLRA, a prisoner need exhaust only 'available' administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). The Supreme Court has identified three examples of unavailable administrative procedures: (1) those that "operate[] as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) those that are "so opaque that [they] become[], practically speaking, incapable of use," where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;" and (3) those where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

"The Second Circuit has made clear that 'administrative exhaustion is not a jurisdictional predicate,' but rather 'failure to exhaust is an affirmative defense.'" *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 545 (S.D.N.Y. 2015) (quoting *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004)). Thus, "defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." *Id.* (quotation omitted).

### B.  Defendant Michaels

In their motion for summary judgment, Defendants argued that "Plaintiff never filed a grievance against [Defendant] Michaels and is therefore barred" from pursuing claims against him.  (Dkt. No. 45-16, p. 18).  Defendants submitted an affidavit from Jeffery Hale, the Assistant Director of the Inmate Grievance Program, stating that Plaintiff never filed any grievances alleging that he was subjected to physical abuse on December 19, 2013, and that Plaintiff never filed any grievances against Michaels for allegedly abusing him, torturing him or waterboarding him.  (Dkt. No. 45-7, pp. 2–3).  Recently, however, in their memorandum on exhaustion, Defendants admitted that this assertion was incorrect and based on an "inadvertent oversight." (Dkt. No. 71-4, p. 10).  Defendants have noted that Mr. Hale's affidavit should have stated that Plaintiff never filed *an appeal* regarding the December 19, 2013 incident—an argument that the Court finds credible, particularly in light of Mr. Hale's position as the custodian of records maintained by CORC.  (Dkt. No. 45-7, p. 1).  Defendants now acknowledge that Plaintiff did grieve his failure to protect claim against Michaels and have produced the relevant grievance file.  (Def. Ex. 4)[1].

Included in that file is a Form 2133, upon which the superintendent rendered a decision that "no misconduct by staff was found and no further action will be taken at this time."  (*Id.* at p. 1).  In accordance with the state grievance program regulations, Form 2133 contains an "Appeal Statement" section—to appeal the superintendent's decision to CORC, Plaintiff must sign therein and return the form to the facility.  (*Id.*); 7 N.Y.C.R.R. § 701.5(d)(1)(i).  Here, the Appeal Statement is unsigned, and there is no record of an appeal.  (Def. Ex. 4, p. 1). Defendants argue that the unsigned Form 2133 and the absence of an appeal in CORC records

---

[1] Citations to exhibits in this Memorandum-Opinion and Order refer to exhibits put into evidence at the evidentiary hearing of April 26, 2017.  (*See* Dkt. Nos. 81–82).

demonstrate that Plaintiff did not appeal the Superintendent's decision.  (Dkt. No. 71-4, pp. 10–11).  Plaintiff responds that he "never received a response or decision regarding the grievances he filed concerning the [Michaels] incident."  (Dkt. No. 73-11, p. 12).

Plaintiff testified at the evidentiary hearing that he did not receive the denial of his grievance, that he always appeals, and that, if he had received the superintendent's Form 2133 denial of his grievance, he would have appealed it to CORC.  This testimony is supported in part by CORC records, which show that "Plaintiff filed approximately 300 appeals to CORC over the past fifteen years" and suggest that Plaintiff is likely to appeal denials of his grievances.  (Dkt. No. 45-7, ¶ 8; Dkt. No. 45-8).

In addition, Plaintiff has submitted handwritten documents titled "Appeal," addressed to the IGRC and to the DOCCS office in Albany, stating his intent to appeal his grievance to CORC.  (Pl. Exs. 17–18).  Plaintiff testified that he addressed both of these documents and put them in the mail while he was in the Special Housing Unit ("SHU").  The Court, however, does not find this testimony credible in light of the testimony of Brandi Collyer, the former Supervisor of the Inmate Grievance Program at Upstate Correctional Facility.   Collyer testified that mail at the facility's SHU was collected by a corrections officer in a locked box, accessible only to a correspondence clerk.  Although Collyer did not personally handle Plaintiff's grievance against Defendant Michaels, she explained the inmate grievance process at Upstate Correctional Facility and testified that the superintendent's decisions were provided to inmates.  Moreover, Jeffery Hale, the Assistant Director of the Inmate Grievance Program, testified that CORC would return to inmates any misdirected correspondence regarding an appeal with instructions on where to send the appeal.  The Court credits the testimony of Collyer and Hale.  Their testimony strongly suggests that if Plaintiff had attempted to mail the documents, they would have been sent and he

would have received some response from CORC; however, there is no record of such correspondence. The Court also notes that these "Appeal" documents do not appear in the exhibits that Plaintiff filed in support of his complaint and were not mentioned in his arguments at the summary judgment stage of this litigation. For these reasons, the Court does not credit Plaintiff's testimony that he sought to appeal his grievance regarding Defendant Michaels.

Having heard and considered all of the testimony, the Court finds that the Defendant has proven by a preponderance of the evidence that the Superintendent's denial of Plaintiff's grievance was provided to Plaintiff and that he failed to appeal that denial.[2] As a result, he has failed to exhaust administrative remedies and cannot proceed to trial against Defendant Michaels.

### C. Defendant LoRusso

The Supreme Court has noted that to exhaust administrative remedies, prisoners must "complete the administrative review process in accordance with the applicable procedural rules." *Espinal*, 558 F.3d at 124 (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation omitted)). Consequently, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, because it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* (internal quotations omitted) (alteration original in *Espinal*). The relevant New York regulation provides that inmate grievances should "contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint." (Def. Ex. 1, p. 5); 7 NYCRR § 701.5(a)(2). The *Espinal* court noted that "[t]he

---

[2] Although Plaintiff notes that some of the documents in the grievance file had an incorrect inmate identification number (91A8212, instead of his actual number, 91A9212), this discrepancy did not prevent Cole from receiving the notice that his grievance had been filed (Pl. Ex. 16) and, in any event the Superintendent's denial of Plaintiff's grievance had the correct inmate number.

New York [Inmate Grievance Program] regulations do not state that a prisoner's grievance must name the responsible party" and ruled that "it is plain that a New York state prisoner is not required to name responsible parties in a grievance in order to exhaust administrative remedies." *Espinal*, 558 F.3d at 126.  The *Espinal* court later noted that "as long as the prisoner provides enough information about the alleged misconduct, . . . the State will normally be able to identify any direct party to a grievance on its own through investigation."  *Id.* at 127–28; *see also Brownell v. Krom*, 446 F.3d 305, 311 n.1 (2d Cir. 2006) (suggesting that it is relevant that "naming [certain individual defendants] was not necessary in this case to give prison officials notice sufficient to resolve [the inmate's] grievance").

Here, Plaintiff has submitted a completed grievance form that names Defendant LoRusso in connection with the alleged assault.  (Pl. Ex. 8).  There is no record, however, that Plaintiff ever submitted that grievance to prison officials, and the Court does not therefore credit that grievance.  (Pl. Ex. 23, Ex. B).  The grievance on file does not allege that that LoRusso was involved in the assault.  (*Id.*; Dkt. No. 71-1, pp. 9–12).  Instead, it alleges that LoRusso destroyed Plaintiff's property.  (*Id.*).

Plaintiff has also submitted letters that he wrote to various officials, in which he included LoRusso as one of the assaulting officers.  (Pl. Ex. 9-12).  However, courts in this circuit have routinely found that such correspondence does not "satisfy the strict exhaustion requirement." *See Harrison v. Goord*, No. 07 Civ. 1806 (HB), 2009 WL 1605770, at *8, 2009 U.S. Dist. LEXIS 48478, at *27–28 (S.D.N.Y. June 9, 2009) (compiling cases).

Nevertheless, the Court finds that the grievance on file is sufficient to exhaust Plaintiff's claim of excessive force against LoRusso.  In his grievance Plaintiff provided a detailed description of the alleged incident, filling in all of the available space on the grievance form with

a description of the order to Defendant Wagner preceding the assault, the assault by Defendant Durante, and the subsequent alleged denial of medical care.  In response to what "action" was "requested," Plaintiff asked that "the assault of Oct. 29, 2013 be investigated by the Office of the Inspector General's Office."  (Dkt. No. 71-1, p. 9).  The October 29, 2013 incident was a documented use of force, and it resulted in an inmate misbehavior report to Cole.  (Dkt. No. 71-1, pp. 13, 49–52).  Both the use of force report and the inmate misbehavior report are in the grievance file, and both reports identify Defendant LoRusso as one of the officers involved in the use of force.  (*Id.*).  According to these reports, LoRusso assisted Defendant Wagner in putting restraints on Cole after Cole assaulted Defendant Durante.  (*Id.*).

The Deputy Superintendent for Security reviewed the use of force report when conducting the investigation into Plaintiff's grievance.  (Pl. Ex. 1; Dkt. No. 45-9, p. 8). Therefore, under the circumstances of this case, Plaintiff provided a sufficiently "specific description of the problem" to exhaust his claim.  Under *Espinal*, Plaintiff provided enough information about the events that he alleged took place, and the facility was capable of determining the rest on its own.  Furthermore, as a pro se grievant, Plaintiff could not "be expected to infer the existence of an identification requirement in the absence of a procedural rule stating that the grievance must include the names of the responsible parties."  *See Espinal*, 558 F.3d at 127.  Plaintiff has therefore exhausted administrative remedies with respect to Defendant LoRusso.

III.     **CONCLUSION**

For these reasons, it is

**ORDERED** that Plaintiff's remaining excessive force claim against Defendant LoRusso may proceed to trial; and it is further

**ORDERED** that Plaintiff's remaining claim against Defendant Michaels is dismissed.

**IT IS SO ORDERED.**

May 4, 2017
Syracuse, New York

Brenda K. Sannes
U.S. District Judge