UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONNIE COLE,

        **Plaintiff,**

v.                                                                                  9:14-CV-539 (BKS/DEP)

ANTHONY M. DURANTE, PAUL M. GONYEA,
RAYMOND JUDWAY, STEPHEN LORUSSO,
AND JOHN WAGNER,

        **Defendants.**
_____

**APPEARANCES:**

For Plaintiff:
**Samantha L. Millier, Esq.**
**John J. Sierotnik, Esq.**
Mackenzie Hughes LLP
400 S. Warren St. Suite 400
Syracuse, NY 13202

**For Defendant:**
**ERIC T. SCHNEIDERMAN, ESQ.**
Attorney General of the State of New York
**Aimee Paquette, Esq.**
Assistant Attorney General, Of Counsel
Syracuse Regional Office
615 Erie Blvd. West, Suite 102
Syracuse, NY 13204

**Hon. Brenda K. Sannes, United States District Judge:**

## ORDER

### Introduction

Presently before the Court is Plaintiff Ronnie Cole's motion in limine. (Dkt. No. 88). Plaintiff raises four arguments: (1) that the October 29, 2013 video should be excluded; (2) that evidence of his convictions and unrelated disciplinary matters should be excluded; (3) that his guilty plea to violent conduct should be excluded as prejudicial; and (4) that his attempted suicide and all evidence regarding the second use of force incident should be excluded. (Dkt. No. 88-2). Defendants have responded to Plaintiff's motion in limine (Dkt. No. 100), and the parties have provided supplemental submissions regarding the video (Dkt. Nos. 103–04, 106–07).

### A. The October 29, 2013 Video

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The video depicts events that occurred after the first use of force incident, which had occurred around 9:40 a.m. on October 29, 2013. (Dkt. No. 88-2, p. 4; Dkt No. 100, p. 2; Dkt. No. 48). The video shows Plaintiff's physical condition: he sits upright in a wheelchair, stands without assistance multiple times, and begins to undress for a strip frisk. (Dkt. No. 48). He then refuses to comply with orders to stand for the strip frisk and redresses himself. (*Id.*). When officers leave the room, he stands and ambulates unassisted. (*Id.*). He later appears to attempt to hang himself on the doorknob before officers enter the room and a scuffle occurs. (*Id.*). The video cuts out between the officers making entry and the scuffle on the floor of the room. (*Id.*). Later in the video, Plaintiff insults officers and tells them to "kick [him]," "call [him] a n*****," or "do something stupid." (*Id.*). At one point, he intentionally exposes his genitals to the camera

2

and taunts the officer who was filming. (*Id.*). As Plaintiff's brief in the pending motion describes, his comments were "obscene, inflammatory, [] racially-charged and homophobic." (Dkt. No. 88-2, p. 6).

Plaintiff argues that the "incremental probative value" of the video "is substantially outweighed by the danger of unfair prejudice, wasting time, or needlessly presenting cumulative evidence." (Dkt. No. 88-2, p. 4). Defendants counter that aspects of the video are highly probative and that they "only seek to submit portions of the video to the jury." (Dkt. No. 100, p. 2). In particular, Defendants argue that: (1) "[i]t depicts Plaintiff's physical condition directly after the first use of force incident <u>and</u> after the second use of force incident"; (2) it "calls into question Plaintiff's credibility" because his version of events includes a claim that he did not stand and swing at Defendant Durante because he is unable to stand; (3) shows the layout of his room in E Wing, where the first use of force incident occurred, and for which there is no photographic evidence. (*Id.* at pp. 2–3). Plaintiff does not object to the portion of the video time-stamped 1:15-1:37 being shown to the jury as a visual aid. (Dkt. No. 106, p. 1).

Having reviewed the video in its entirety and considered the parties' submissions, the Court finds as follows:

(1) The clip of the video time-stamped 1:15-1:54 is admissible in Defendants' case-in-chief, as its probativity in showing Plaintiff's room is not substantially outweighed by any of the concerns in Fed. R. Evid. 403.

(2) Clips of the video at 3:40-4:00 and 9:20-9:38 show Plaintiff exiting his wheelchair, standing, and walking unassisted. In light of corrections to Plaintiff's initial deposition testimony that he was unable to perform these actions, the probativity of these clips is substantially outweighed by the danger of time wasting or needless

       presentation of cumulative evidence.  Defendants may not present these clips in their case-in-chief; however, the Court will permit Defendants to use these visual clips as impeachment if Plaintiff testifies that he is unable to exit his wheelchair, stand, or ambulate.

(3) The clip of the video at 39:30-40:00 shows Plaintiff's face, where he claims injury from the first use of force incident, in a close-up shot.  Though the video quality is somewhat low, the jury can observe that quality and decide for themselves the weight to assign the clip.  Because this is the only visual record of Plaintiff's face after the first use of force incident but before the second, it is highly probative and the probative value of this visual evidence outweighs the concern of unfair prejudice under Fed. R. Evid. 403.  Plaintiff argues that this clip depicts him "hitting the glass of the door in frustration."  The Court observed this action at 39:20-39:22, which is not in the clip at issue.  To be clear, video of Plaintiff striking the door is inadmissible in the Defendants' case-in-chief.

### B. Evidence of Prior Felonies

At the pre-trial teleconference held on August 14, 2017, the parties reached an agreement on this issue.  Therefore, this portion of the motion in limine is denied as moot.

### C. Guilty Plea to Violent Conduct

After the events at issue in this trial, Plaintiff pled guilty at a disciplinary hearing to a charge of violent conduct, though that conviction was later overturned on procedural grounds.  Plaintiff now argues that the conviction is inadmissible as the equivalent of a withdrawn guilty plea under Fed. R. Evid. 410(a)(1) or an annulled conviction under Fed. R. Evid. 609(c).

Neither of these rules applies here. Fed. R. Evid. 410(a)(1) provides that evidence of "a guilty plea that was later withdrawn" "is not admissible against the defendant who made the plea or participated in the plea discussions." Here, the plea was never withdrawn. Fed. R. Evid. 609(c) makes evidence of a conviction inadmissible where it has been the subject of a pardon, annulment, or similar procedure based on a finding of rehabilitation or innocence. That does not apply in this case, where the conviction was overturned on procedural grounds.

Plaintiff's guilty plea to violent conduct arising out of this incident is highly relevant to his claim that the officers charged him with a false misbehavior report to cover up their attack, and to his claim of excessive force. On balance under Fed. R. Evid. 403, the Court finds that the significant probative value of this guilty plea far outweighs any danger of unfair prejudice or confusion of issues. As Defendants argue, Plaintiff can inquire into the meaning of the charges and the hearing procedures on cross-examination.

### D. Suicide Attempt and Second Use of Force Incident

Plaintiff argues that the evidence of his attempted suicide and the officers' resulting use of force to subdue him should be excluded as irrelevant and confusing. (Dkt. No. 88-2, p. 11). However, as Defendants argue, the second use of force incident is probative on the issue of whether the injuries that Plaintiff suffered were unrelated to the first use of force incident. Photographs of his injuries were not taken until after the second use of force incident. As Defendants note, "[i]t is Plaintiff's burden to demonstrate by a preponderance of the evidence that the <u>first use of force incident</u> caused his alleged injuries . . . [and t]he jury is entitled to hear evidence of the second use of force incident in order to make the determination as to whether Plaintiff has carried that burden." (Dkt. No. 100, p. 8) (emphasis in original). The suicide attempt is the event that prompted the second use of force; it provides necessary context to the

5

officers' use of force. Consequently, the Court finds that the probative value of testimony regarding the second use of force incident and suicide attempt is not substantially outweighed by the danger of unfair prejudice or confusion of the issues.

## Conclusion

For these reasons, it is

**ORDERED** that Plaintiff's motion in limine (Dkt. No. 88) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff's motion to preclude the October 29, 2013 video is **GRANTED IN PART** and **DENIED IN PART** as discussed herein; and it is further

**ORDERED** that Plaintiff's motion with respect to prior felony convictions is **DENIED** as moot; and it is further

**ORDERED** that Plaintiff's motion to preclude his guilty plea is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion to preclude evidence of his suicide attempt and the second use of force incident is **DENIED**.

**IT IS SO ORDERED.**

August 16, 2017
Syracuse, NY

Brenda K. Sannes
U.S. District Judge